**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES HINCHLIFFE, *et al*.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 08-2094** |
| | : | |
| **OPTION ONE MORTGAGE** | : | |
| **CORPORATION, *et al.*** | : | |

**MEMORANDUM OPINION**

Savage, J.                                                          June 16, 2009

        In this action seeking relief for alleged violations of the Truth in Lending Act

("TILA"),[1] the Real Estate Settlement Procedures Act ("RESPA"),[2] Pennsylvania's Fair

Credit Extension Uniformity Act ("FCEUA"),[3] and Pennsylvania's Unfair Trade Practices

and Consumer Protection Law ("UTPCPL"),[4] the defendant Option One Mortgage

Corporation ("Option One") has moved for summary judgment, arguing that these statutes

do not apply because  the plaintiffs, James and Yong Sun Hinchliffe,[5] refinanced their

residence primarily for business purposes.  The parties do not dispute that these statutes

cover only personal consumer credit transactions and not commercial ones.  Although

Hinchliffe asserts that the loan at issue was for personal use, the undisputed facts

---

[1]  15 U.S.C. §§ 1601 *et seq.*

[2]  12 U.S.C. §§ 2602 *et seq.*

[3]  73 Pa. C.S. §§ 2270.1 *et seq.*

[4]  73 P.S. §§ 201-1 *et seq.*

[5]  The mortgaged property is owned solely by James Hinchliffe, who is the sole mortgagor.  His wife, Yong Sun Hinchliffe, is not a proper party.  She did not sign the mortgage, the note, or the TILA disclosure statement.  Therefore, throughout this opinion, unless otherwise noted, "Hinchliffe" refers only to James Hinchliffe.

demonstrate that the loan proceeds were to finance his real estate investments. Therefore, because the statutes relied upon by the Hinchliffes do not apply to the transaction at issue, Option One is entitled to judgment as a matter of law and its motion for summary judgment will be granted.

## Factual Background

On September 15, 2006, Hinchliffe borrowed $283,500 from H&R Block Mortgage Corporation.[6]  The loan was secured by property owned only by him and consisting of four apartments located at 107 National Avenue, Linwood, Pennsylvania (the "Property").[7]  H&R Block assigned the loan to Option One that same day.[8]

Prior to signing the loan documents, Hinchliffe knew that the adjustable interest rate was 10.925%.  Deposition of James Hinchliffe ("Hinchliffe Depo.") at Tr. 45:17-46:8.  Even though he "expected" a 6.75% and "hoped" for a 5.5% rate, he still closed on the loan at the 10.925% interest rate.  *Id*. at 48:2-11.  When questioned why he still proceeded and did not decline to sign the loan upon learning that the adjustable interest rate was 10.925%, Hinchliffe testified that he had "already committed [himself] to other obligations," which he later defined as maintaining "[his] other properties and the taxes and holding onto

---

[6]  The mortgage clearly lists James Hinchliffe as the sole mortgagor.  *See* Mortgage Agreement, attached as Ex. B to Def.'s Statement of Undisputed Facts, at p. 1.  Despite this fact, Yong Sun Hinchliffe also signed the loan even though she is not an owner of the Property and cannot mortgage property she does not own.  She is not on the note accompanying the mortgage.  Because the Hinchliffes' claims are not subject to any of the statutes upon which they rely, this inconsistency is not relevant to our analysis.

[7]  It is not contested that the Hinchliffes continue to reside, as they did at the time of the loan, in at least one of the Property's four apartments.  Although the appraisal in connection with the loan reported that three of the four apartments were rented to tenants, the Hinchliffes claim they reside in all four.  For purposes of this motion, the Property will be treated as the Hinchliffes' personal residence only and not a rental property.

[8]  Option One does not contest assignee liability.

them." *Id.* at 77:13-14, 23-24.[9]  After satisfaction of a preexisting mortgage held by Option

One and payment of closing costs, Hinchliffe received $75,940.82 at closing, most of which

he spent "paying taxes and maintenance" on another property in the Borough of Trainer.

*Id.* at 79:3-15, 80:6-18.

### Procedural History

Almost two years after the closing date of September 15, 2006, the Hinchliffes filed

a complaint asserting seventeen (17) causes of action against Option One and unidentified

"John Does" in May 2008.   After Option One moved to dismiss the Complaint, the

Hinchliffes filed a First Amended Complaint followed by an Amended First Amended

Complaint ("Amended Complaint"), which reduced the number of the original claims.  The

remaining four counts assert federal causes of action under TILA and RESPA and state

causes of action under Pennsylvania law, the FCEUA and the UTPCPL.

After Option One answered the amended complaint and asserted several affirmative

defenses, it moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c),[10] which

the Hinchliffes opposed.   While that motion was pending and after discovery was

completed, Option One filed its motion for summary judgment, asserting that none of the

statutes relied upon by the Hinchliffes apply because the loan was primarily a business

transaction.  Alternatively, Option One argues that the Hinchliffes' claims are barred by the

---

[9]  Hinchliffe testified that an unnamed representative from Option One told him prior to closing that
he "could refinance in one year from [the] closing date to get a prime rate." *Id.* at 46:16-18. This conversation
was never documented in writing.  Because it is not germane to our analysis as to whether the loan was
primarily for personal or business purposes, it is not a disputed material fact.

[10]  Because Option One is entitled to summary judgment in its favor, its motion for judgment on the
pleadings is moot.

applicable statute of limitations or must fail because there are no facts of record to support them. *Id*.[11]

The Hinchliffes filed an untimely response to Option One's motion for summary judgment.[12]  First, they argue that Option One's "claims" in its motion "are barred . . . to the extent not raised in its Motion to Dismiss (No. 6) or via its Affirmative Defenses (No. 19)."[13] Second, they argue that the loan was primarily consumer in nature because it was secured by the Hinchliffes' residence and because they were provided with a "Truth-in-Lending disclosure and TILA Notice of Right of [sic] Rescind." *Id*. at 5.  Third, they contend that the applicable statute of limitations does not bar claims for recoupment.[14]  Finally, the

---

[11]  Option One argues in a footnote that "[i]t goes without saying that *all* of Mrs. Hunchliffe's claims must fail because she was not a party to the [loan]." Def.'s Mot. at 11, n.3.  The Hinchliffes do not address this argument.  Because all of the Hinchliffes' claims are subject to summary dismissal, it is not necessary to consider this argument.

[12]  The Scheduling Order instructed the Hinchliffes to respond to Option One's motion for summary judgment, which was filed on May 8, 2009, by May 22, 2009.  *See* Scheduling Order of Jan. 5, 2009 (Document No. 22).  The Hinchliffes' motion to stay this deadline was denied.  *See* Plfs.' Mot. (Document No. 45); Order of May 11, 2009 (Document No. 46).  The Hinchliffes then submitted an improperly filed Stipulation to submit their response by May 27, 2009.  *See* Stipulation (Document No. 47).  The court rejected this stipulation.  *See* Order of May 28, 2009 (Document No. 49).  Nevertheless, because Option One's motion may not be granted simply because it is unopposed, the Hinchliffes' arguments will be considered.  *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990) (holding that district court may not grant motion for summary judgment simply because it is unopposed).

[13]  Only affirmative defenses, which would unfairly surprise the plaintiff if not specifically pleaded, are waived if not raised in the initial stages of litigation.  *See In re Sterten*, 546 F.3d 278, 285-86 (3d Cir. 2008). The Hinchliffes fail to identify which, if any, of Option One's arguments are affirmative defenses and are, thus, barred if not previously raised.  As with other arguments raised in the Hinchliffes' opposition, it is doubtful whether this position was researched and thoroughly analyzed.  *See, e.g., Andrew v. Ivanhoe Financial, Inc.*, 2008 WL 2265287, at *3, n.6 (E.D. Pa. May 30, 2008) (Baylson, J.) (reprimanding Hinchliffes' counsel in that action for "lack of careful drafting and research as expected in federal practice.").  This argument will not be considered.

[14]  None of the Hinchliffes' claims are for recoupment. *See* Black's Law Dictionary 1302 (8th ed.2004) (defining recoupment as "[r]eduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction").

Hinchliffes make allegations that do not appear in the Amended Complaint.[15]

The day after the Hinchliffes filed their untimely opposition, Option One responded in further support of their motion for summary judgment.  It noted that the Hinchliffes failed to cite to facts in the record to support their arguments, thus failing to show that there are any material facts in dispute that would preclude summary judgment. Additionally, it pointed out that the fact that the loan was secured by the Hinchliffes' residence does not trump the fact that both Hinchliffes testified that the Property was refinanced to secure funds for Hinchliffe's development properties.  Consequently, they argue TILA, RESPA, the FCEUA and the UTPCPL do not apply.  Option One further contends that the record is devoid of facts to support the Hinchliffes' claims and that the statute of limitation bars certain of their claims, none of which are for recoupment.

The day after Option One filed its reply memorandum, the Hinchliffes filed the transcripts of their deposition testimonies, which apparently are intended as exhibits to their untimely opposition filed two days earlier.  Despite plaintiffs' disregard of the requirements for responding to a motion for summary judgment,[16] the entire record is considered in deciding Option One's motion for summary judgment.

---

[15] In their response to the motion, the Hinchliffes argue for the first time that the loan was confusing in violation of the  UTPCPL and FCEUA because it provided for Mrs. Hinchliffe's signature even though she was not designated a mortgagor on the face of the loan.  Also, they now argue that Option One violated the UTPCPL and FCEUA by collecting on the loan without recording the assignment from H&R Block and that Option One did not distribute four copies, two each for Mr. and Mrs. Hinchliffe, of the Notice of Right to Cancel.  *See* Plfs.' Opp. at 6.

[16] *See* Order of May 28, 2009 (Document No. 49) (denying stipulation to file an untimely opposition filed by the Hinchliffes' counsel on the same day that their opposition was due).

**Summary Judgment Standard**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining Option One's motion, we must view the facts in the light most favorable to Hinchliffe, the nonmoving party, and draw all reason-able inferences in his favor. *Intervest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

As the party moving for summary judgment, Option One bears the initial burden of demonstrating that there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). If it has successfully demonstrated this, Hinchliffe cannot rest on the pleadings. To defeat summary judgment, he must come forward with probative evidence establishing the prima facie elements of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir.2005). He must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Andersonv. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**Discussion**

Hinchliffe relies on two federal statutes, TILA and RESPA, and two Pennsylvania statutes, the UTPCPL and the FCEUA. Each of these statutes applies only to consumer

6

credit transactions and not to loans for commercial purposes.  In other words, TILA, RESPA, FCEUA, and UTPCPL do not apply to business transactions, such as the extension of credit to develop investment property.  15 U.S.C.A. § 1602(h) (TILA only applies to transactions "primarily [intended] for personal, family, or household purposes"); 15 U.S.C.A. § 1603(1) (TILA does not apply to "credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes"); 12 U.S.C. § 2606(a)(1) (RESPA "does not apply to credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes"); 73 P.S. § 2270.3 (the FCEUA applies only to loans "obtained primarily for personal, family or household purposes"); 73 P.S. § 201-9.2(a) (the UTPCPL applies only to transactions "primarily for personal, family or household purposes").

In order to determine whether the loan was primarily personal or commercial in nature, we must look at the entire transaction and determine the borrower's primary motive for seeking the loan.  *Gombosi v. Carteret Mortgage Corp.*, 894 F. Supp. 176, 180 (E.D. Pa. 1995).  Hinchliffe has the burden of evidencing his intent and showing that the loan was entered into primarily for personal purposes, as opposed to financing his businesses. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 (3d Cir. 1974); *Gombosi*, 894 F. Supp. at 180.  As Option One points out, he has not done so.  The facts in the record - most notably the Hinchliffes' own deposition testimonies - viewed in the light most favorable to Hinchliffe demonstrate that the primary purpose of the loan was business.  Specifically, the record shows that the purpose of the loan was to obtain cash to maintain and improve Hinchliffe's development properties.

Hinchliffe does not dispute the record evidence.   Rather, he argues that "[n]otwithstanding any other proofs [sic], this loan, on its face, was to be and is a consumer loan intended to be [sic] and was secured by [the Hinchliffe's] principal and, in fact, only residence." Plfs.' Opp. at 5.  Hinchliffe's bald contention is contradicted by the undisputed facts.  The mortgagor's residing in a part of a predominantly commercial property does not make the mortgage loan a personal loan.  In any event, the parties contest whether the Hinchliffes reside in the entire quadplex or just one of the four apartments.  Resolution of this dispute is not necessary.  For purposes of deciding this motion, we assume the Property is the Hinchliffes' primary residence and no one else lives there.

The facts must be examined to determine if the loan was primarily commercial or personal.  *See, e.g., Gombosi*, 894 F. Supp. at 180 ("Where credit is extended for both personal and business reasons, the mere fact that the transaction has *some* personal purpose does not automatically render it subject to the provisions of TILA.").  Here, the fact that the loan refinanced the property in which the Hinchliffes reside does not itself establish that the primary purpose of the loan was personal rather than business.  *See Sherlock v. Herdelin*, 2008 WL 732146, at *3 (E.D. Pa. Mar. 17, 2008) (Joyner, J.) (courts "have been virtually unanimous in finding that the mere fact that the loan was secured by the family home does not itself" show that the loan was primarily personal).[17]  In short, in determining

---

[17]   The Hinchliffes further attempt to evade this conclusion by then arguing that Option One is "estopped from denying" the personal nature of the loan after providing the requisite TILA disclosures and Notice of Right to Rescind at closing.  *See Gombosi*, 894 F. Supp. at 182 (rejecting identical argument under similar factual circumstances); 12 C.F.R. Pt. 226, Supp. I, § 226.3(a)(1) ("[i]f some question exists as to the primary purpose for a credit extension, the creditor is, of course, free to make the disclosures, and the fact that disclosures are made under such circumstances is not controlling on the question of whether the transaction was exempt.").

whether the loan qualifies for TILA, RESPA , UTPCPL or FCEUA protection, the focus is not on the nature of the property securing the loan, but on the use of the loan proceeds.

Hinchliffe's wife testified that her husband refinanced the Property so that "he can operate his business."  Deposition of Yong Sun Hinchliffe ("Y.S. Hinchliffe Depo.") at Tr. 11:2-11.  When asked what he did for a living, Hinchliffe discussed his ownership interests in the Borough of Trainer property and other investment properties, which he is developing or in the process of developing.  *Id*. at 19:8-20:1.  He was not otherwise employed.  *Id*. at 79:20-21.

Hinchliffe has failed to proffer any evidence, direct or indirect, that the loan was personal rather than commercial.[18]  *See Ocasio v. Ocwen Loan Servicing, LLC*, 2009 WL 650244, at *4 (E.D. Pa. Mar. 13, 2009) (Bartle, C.J.) (granting summary judgment because plaintiffs failed to show that the loan was personal in nature).  On the contrary, by their own words, they have presented undisputed evidence that the loan was primarily for Hinchliffe's business purposes.  Because each of the statutes relied upon by the Hinchliffes apply only to loans intended for personal and not commercial use, Option One is entitled to summary judgment on all claims.[19]

### Conclusion

There is no genuine issue of material fact to be determined by a jury.  By his own

---

[18]  Hinchliffe's self-serving testimony that the primary purpose for the loan was "personal use" is contradicted by his own description of the loan's actual purpose.  *See* Hinchliffe Depo. at Tr. 78:9-15.

[19]  Because the loan was primarily commercial in nature and, thus, not subject to TILA, RESPA, the FCEUA, or the UTPCPL, it is not necessary to determine whether the statute of limitations has expired or whether there are sufficient facts in the record to support a claim under any of the four statutes.

admission, Hinchliffe refinanced his primary residence to obtain cash to support his investment properties. Therefore, because the loan was intended primarily for commercial purposes, Option One is entitled to judgment as matter of law.